UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| MIMOZA DUKLESKA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:14-CV-430 JD |
| | ) |
| CAROLYN W. COLVIN, | ) |
| ACTING COMMISSIONER OF SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Mimoza Dukleska ("Dukleska") applied for Disability Insurance Benefits in 2010. The application was denied initially and upon reconsideration. Dukleska then filed a complaint in this Court, seeking review of the final decision of the Defendant Commissioner of Social Security ("Commissioner"). [DE 1]. On June 12, 2015, Dukleska filed her brief in support of her request to reverse the decision of the Commissioner, [DE 14], to which the Commissioner responded on September 17, 2015. [DE 19]. Dukleska did not file a reply. The matter is now ripe for ruling, and jurisdiction is established pursuant to 42 U.S.C. § 405(g). For the following reasons the Court REMANDS this matter to the Commissioner for further proceedings.

### I. FACTUAL BACKGROUND

Dukleska filed her application for benefits in 2010, alleging an onset date of January 7, 2010, for limitations caused by mental impairments. Dukleska's application was denied initially on October 1, 2010, and upon reconsideration on December 28, 2010. Dukleska then requested a hearing. A hearing with Administrative Law Judge Henry Kramzyk ("ALJ") was held on January 26, 2012. On February 6, 2012, the ALJ denied Dukleska's claim for benefits. This case was

then remanded back to the ALJ by the Appeals Council on March 12, 2013. The ALJ then had a second hearing on August 19, 2013, at which Dukleska, represented by counsel and aided by a Macedonian interpreter, testified. The ALJ also heard testimony from Ronald Malik, an impartial vocational expert.

In the written opinion that followed, the ALJ determined Dukleska last met the insured status requirements of the Social Security Act through December 31, 2014. Dukleska had not engaged in substantial gainful activity since January 7, 2010, the alleged onset date. Furthermore, the ALJ determined Dukleska suffered severe impairments in the form of major depressive disorder and generalized anxiety disorder, but dismissed headaches, status-post fracture of the distal right tibia, insomnia and obesity as non-severe impairments. The ALJ then opined that Dukleska did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, Appendix 1 ("Listings"). Ultimately the ALJ found Dukleska had the residual functional capacity ("RFC")[1] to perform a full range of work at all exertional levels. However, the ALJ gave the following non-exertional limitations: Dukleska could understand, remember, and carry out short, simple repetitive instructions; sustain attention/concentration for two hour periods at a time and for eight hours in the workday on short, simple repetitive instructions; use judgment in making work decisions related to short, simple repetitive instructions. The ALJ further found Dukleska required an occupation with occasional coworker contact and supervision, a set routine and procedures, no contact with the public, few changes during the workday, and no fast-paced production. Finally, the ALJ found Dukleska was capable of maintaining regular attendance, punctuality within customary tolerances; and performing activities within a schedule.

---

[1] Residual Functioning Capacity is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545.

After determining Dukleska's RFC, the ALJ opined Duklesa was capable of performing past relevant work as a buffing machine tender. The ALJ also presented hypothetical questions to the VE who testified Dukleska's RFC allowed her to work in other jobs that existed in significant numbers in the national economy as a small parts assembler, a preassembler, and a fastener. As a result, the ALJ ruled that Dukleska was not disabled. The Appeals Council denied review of the ALJ's decision, making the decision the final determination of the Commissioner. 20 C.F.R. § 404.981; *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013).

## II. STANDARD OF REVIEW

In reviewing the decision, the Court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection, and

may not ignore an entire line of evidence that is contrary to his findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (citation omitted). Rather, an ALJ must "articulate at some minimal level his analysis of the evidence" to permit an informed review. *Id*. Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. Ultimately, while the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). Furthermore, conclusions of law are not entitled to deference; so, if the Commissioner commits an error of law, reversal is required without regard to the volume of evidence in support of the factual findings. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

## III. ANALYSIS

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)-(v). The steps are used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;
2. Whether the claimant has a medically severe impairment;
3. Whether the claimant's impairment meets or equals one listed in the regulations;
4. Whether the claimant can still perform relevant past work; and

4

5. Whether the claimant can perform other work in the community.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

If the claimant is performing substantial gainful activity or does not have a severe medically determinable impairment, or a combination of impairments that is severe and meets the duration requirement, then the claimant will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i)–(ii). At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, disability is acknowledged by the Commissioner. 20 C.F.R. § 404.1520(a)(4)(iii). In the alternative, if a Listing is not met or equaled in between steps three and four, the ALJ must assess the claimant's RFC, which is used to determine whether the claimant can perform her past work under step four and whether the claimant can perform other work in society at step five of the analysis. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof in steps one through four, while the burden shifts to the Commissioner in step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

Dukleska challenges the ALJ's decision for two reasons. First, the ALJ improperly applied the treating source rule. Second, the ALJ failed to provide a proper credibility analysis of Dukleska's subjective testimony. For the following reasons this case is REMANDED for further proceedings consistent with this opinion.

**A. Treating Source Rule**

Dukleska argues the ALJ did not properly evaluate and weigh the opinions of the treating physicians in this case. Specifically, Dukleska challenges the ALJ's reliance on her activities of daily living and social functioning.

5

Disability cases typically involve three types of physicians: 1) a treating physician who regularly provides care to the claimant; 2) an examining physician who conducts a one-time physical exam of the claimant; and 3) a reviewing or non-examining physician who has never examined the claimant, but read the claimant's files to provide guidance to an adjudicator. *See Giles v. Astrue*, 433 Fed.Appx. 241, 246 (5th Cir. 2011). The opinion of the first type, a "treating physician," is ordinarily afforded special deference in disability proceedings. The regulations governing social security proceedings instruct claimants to that effect:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. § 404.1527(c)(2).

The treating physician's opinion is *not* entitled to controlling weight, however, where it is not supported by the objective medical evidence, where it is inconsistent with other substantial evidence in the record, or where it is internally inconsistent. *See Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000) (citing *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995)). Ultimately, an ALJ's decision to give lesser weight to a treating physician's opinion is afforded great deference so long as the ALJ minimally articulates his reasons for doing so. *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008). The Seventh Circuit has deemed this very deferential standard to be "lax." *Id.* Nevertheless, the ALJ must offer "good reasons" for discounting a treating physician's opinion. *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011).

If the ALJ decides the treating physician's opinion should not be given controlling weight, the ALJ is "required by regulation to consider certain factors in order to decide how much weight to give the opinion[.]" *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014). These factors are set forth in 20 C.F.R. § 404.1527(c)(2)(i)-(ii) and § 404.1527(c)(3)-(6) including: 1) the "length of the treatment relationship and the frequency of examination," 2) the "[n]ature and extent of the treatment relationship"; 3) "[s]upportability"; 4) consistency "with the record as a whole"; and 5) whether the treating physician was a specialist in the relevant area.

In the case at hand the ALJ erred in his evaluation of the treating physicians' opinions by misplacing reliance on Dukleska's daily living and social functioning activities. Dukleska had three treating physicians in this case – Dr. Ashish Jain, Dr. Marcus Wigutow, and Dr. Nadezda Djurovic. Dukleska saw Dr. Djurovic in June 2010 with a complaint of being depressed. (R. 304). Dr. Djurovic referred Dukleska to a psychologist. (*Id.*) On December 29, 2011, Dr. Djurovic completed a Mental Impairment Medical Assessment Form ("Mental Impairment Form"). (R. 412). Dr. Djurovic opined Dukleska suffered marked limitations in all mental abilities and aptitude needed to work, had a Global Assessment Functioning ("GAF") score[2] between 30 and 40, and estimated Dukleska would miss four or more days a month of work due to her disability. (R. 412).

In July 2010, Dukleska met with a psychologist, Dr. Wigutow. (R. 311-314). Dr. Wigutow prescribed antidepressant medication and set a follow up appointment for one month. (R. 314). In August 2010, after being on her medication for approximately a month, Dukleska reported her days were easier, but still said she was lonely and sad, however, she no longer

---

[2] The GAF score is a numeric scale of 0 through 100 used to assess severity of symptoms and functional level. *Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders* 32 (4th ed. text revision 2000). Although the American Psychiatric Association recently discontinued use of the GAF metric, it was still in use during the period Dukleska's examinations occurred. *See id.* 16 (5th ed. 2013).

cried.[3] (R. 315). Dukleska continued under the care of Dr. Wigutow in October and November of 2010. (R. 343). In January and March of 2011, Dr. Wigutow prescribed sleep medication. (R. 388). Later in March 2011, Dr. Wigutow switched Dukleska's sleep aid and antidepressant medications. (*Id*.) In April 2011, Dukleska told Dr. Wigutow the new antidepressant was not working as well as her previous antidepressant, Lexapro, and Dr. Witgutow switched Dukleska back to Lexapro. (R. 396). In November 2011, Dr. Wigutow prescribed another antidepressant for Dukleska to try. (R. 398). Then, in December 2011, Dr. Wigutow completed a Mental Impairment Form. (R. 413). Dr. Wigutow opined that Dukleska suffered marked limitations in all areas of mental abilities and aptitude needed to work, would be "off task" 40% during an eight hour workday, and had a GAF score between 30 and 40. (*Id*.)

In March 2012, Dukleska changed psychologists to Dr. Jain, who diagnosed Dukleska with moderate major depressive disorder, dysthymia, and generalized anxiety disorder. (R. 424). Dr. Jain opined Dukleska had a GAF score of 50 to 55. (*Id*.) After assessing Dukleska, Dr. Jain changed Duklesa's antidepressant. (R. 425). Dukleska continued under Dr. Jain's care through June 2013. During this period of time Dukleska saw Dr. Jain at least six times, changing medication for antidepressants as needed. (R. 416, 418, 421, 422, 427, 433). In March of 2012 Dukleska first reported she was feeling more depressed, which is why she came to see Dr. Jain. (R. 422). Dr. Jain changed Dukleska's antidepressant. (R. 425). At her next appointment in May of 2012, Dukleska reported improvement of her depression, but noted she was anxious "off and on" and had poor concentration at times. (R. 421). Dr. Jain had Dukleska discontinue her current antidepressant, Ativan, and increased her dosage on another antidepressant. (*Id*.) Then in December of 2012, after discontinuing the Ativan, Dukleska reported she had good and bad

---

[3] This Court would note the medical records for Dr. Wigutow are hand written and largely illegible. To the extent possible, this Court tried to decipher Dr. Wigutow's notes.

8

days, but still felt depressed and anxious on some days. (R. 418). Dukleska reported low motivation and feeling helpless at times. (*Id*.) Dr. Jain then added a new medication BuSpar to Dukleska's treatment. (R. 419). At Dukleska's appointment in January 2013, Dukleska again reported good days and bad days, but noted her anxiety never stops. (R. 416). She reported she felt bad when she did not want to leave or do anything outside the home, and was tired all the time. (*Id*.) Dr. Jain noted Dukleska continued to have anhedonia.[4] (*Id*.) Dr. Jain then changed Dukleska's antidepressant again. (R. 417). In her appointment on March 22, 2013, Dukleska reported she was feeling better, but still feels depressed. (R. 434). Dukleska noted she was okay at home, but when she left the house, especially by herself, she reported being scared. (*Id*.) Dukleska also reported feeling tired and having a difficult time focusing. (*Id*.) Dr. Jain noted Dukleska continued to experience anhedonia. (*Id*.) Dr. Jain further noted Dukleska seemed to be responding better to the most recent antidepressant, and began to lower other medications. (*Id*.) In May 2013, Dukleska followed up again with Dr. Jain. (R. 427). Dukleska reported taking Ativan, a prescription she previously did not need to use. (R. 428). However, Dukleska reported she felt "much calmer" as a result of taking it. (R. 428). Dukleska reported her anxiety was better but her depression continues to come and go. (*Id*.) Lastly, Dukleska reported fair concentration but feeling tired. (*Id*.) In June 2013, Dr. Jain completed a Mental Impairment Form and opined Dukleska had mild limitations in accepting instructions and responding appropriately to criticism from supervisors, and getting along with co-workers without unduly distracting them. (R. 415). Dr. Jain also opined Dukleska would be off task 50% of the workday, and had marked limitations in activities of daily living, maintaining concentration, persistence and pace, maintaining social functioning, and dealing with normal work stress. (*Id*.) Dr. Jain further opined

---

[4] Anhedonia is the inability to experience pleasure in acts that normally produce it. *See Campbell v. Astrue*, 627 F.3d 299, 301, n. 1 (7th Cir. 2010) (citation omitted).

Dukleska would miss four or more days of work a month, had a GAF score of 40-45, and that the limitations Dukleska had did not occur as of January 2010.[5] (*Id.*)

The ALJ gave "little weight" to all three of Dukleska's treating physicians, reasoning their opinions were inconsistent with the record. As evidence of inconsistencies the ALJ relies almost exclusively on Dukleska's reported activities. The ALJ's reliance is misplaced, however, where the ALJ failed to consider the quality, sustainability, and independence of the activities.

Turning first to the activities of daily living, all three of Dukleska's physicians opined Dukleska experienced marked limitations in these activities. The ALJ gave "little weight" to the opinions of Dr. Jain, Dr. Wigutow, and Dr. Djurovic, as inconsistent because of Dukleska reported activities of cooking and cleaning. As set forth in the Social Security Regulations, any activity is assessed for the quality by which it is completed including "independence, appropriateness, effectiveness, and [the] sustainability" of the activity. 20 C.F.R. Part 404, Subpt. P, Appendix 1, § 12.00 (C)(1). Dukleska's "cooking" consists of preparing coffee and a banana for breakfast and yogurt and an apple for dinner. (R. 320). Dukleska's son reports she can cook cereal and a "sandwich sometimes." (R. 252). Dukleska stated she cooks sandwiches, cereal and a cup of milk as meals. (R. 261). Additionally, Dukleska states she only prepares food for herself when she feels better. (*Id.*) Even if one could characterize those activities as cooking, the ALJ fails to recognize the quality or sustainability of the activity. 20 C.F.R. Part 404, Subpt. P, Appendix 1, § 12.00 (C)(1). Dukleska's cooking at best is simplistic, but more importantly it is not constant. The ALJ's reliance, without recognizing these limitations, is therefore misplaced. Likewise, Dukleska's ability to perform light cleaning is over relied upon given the limited

---

[5] It is unclear to this Court whether Dukleska's seeming decline is a result of new developments or a decline of her original condition. Neither party raises any argument regarding this issue. On remand, however, the ALJ may want to seek to clarify this opinion.

nature with which Dukleska actually accomplishes the task. As noted by Dukleska and her family, she can do laundry at most once a week, but only under the supervision and with help of her family. (R. 252, 261). As noted by Dukleska's son, the family takes over the laundry to allow her to rest. (R. 252). Dukleska reports only being able to clean when she feels better. (R. 261). Again, the ALJ relies on Dukleska's cleaning without considering the quality or sustainability of the task. The ALJ's conclusion ignores evidence in the record, and cherry picks evidence from the record which support a finding of non-disability while ignoring evidence that indicates a disability finding. *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009)).

Similarly the ALJ relies on Dukleska's travel to Macedonia, ability to go to church once a month with her sister-in-law, and ability to go to the grocery store as inconsistent with the findings that Dukleska suffers marked limitations in social functioning. As with Dukleska's activities of daily living, the ALJ continues to overstate the significance of these social activities. As set forth in the Social Security Regulations, social functioning refers to the "capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals." 20 C.F.R. Part 404, Subpt. P, Appendix 1, § 12.00 (C)(2). Again, the ALJ concludes Dukleska performs activities of social functioning without considering her ability to do so independently and on a sustained basis. When asked by the ALJ about traveling to Macedonia, Dukleska identified she did not travel for a vacation, but rather to return home to her village. (R. 52). Dukleska clarified that her family assisted her throughout the trip, and when she got to Macedonia, Dukleska stayed at home, alone. (R. 57-58). Dukleska did identify that while being at home, alone she did not have any problems. (R. 58). Likewise, Dukleska attends church at most monthly, but only with the assistance of her husband or sister-in-law. (R. 55, 263). Dukleska testified she relies on her husband to go to the store, and her ability to go depends on

her depression. (R. 262). As Dukleska's son notes, the family usually finishes up the grocery shopping, and Dukleska has to be taken to the car to rest when she gets a headache while shopping. (R. 253). Again, the ALJ relies entirely on Dukleska's reported activities as evidence of her ability to function socially. Yet, the ALJ does not appear to consider that Dukleska is unable to perform any activities alone, let alone consistently. To wholly reject the opinions of all three of Dukleska's treating physicians because of these alleged inconsistencies is error. While a treating physician's opinion is not entitled to controlling weight where it is inconsistent with evidence in the record, *Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000) (citation omitted), Dukleska should not be summarily denied benefits for indicating she is capable of performing limited tasks to a certain degree. The ALJ's failure to recognize the quality, sustainability, and independence of these activities render the analysis fatally flawed.

This Court would further note the ALJ's finding that Dukleska's GAF scores are inconsistent with the record is concerning, where this line of evidence clearly corroborates Dukleska's limitations. The ALJ dismisses the GAF scores as inconsistent with the record because of Dukleska's reported activities. It is puzzling to this Court why the ALJ would dismiss an entire line of evidence that appears to corroborate the severity of Dukleska's condition, as well as her limitations in performing activities of daily living and social functioning. This point is especially belabored by the fact that all of Dukleska's treating physicians, as well as *both* state agency psychologists, Gary Durak and Kenneth Neville, assign low GAF scores.[6] For the ALJ to

---

[6] Dr. Djurovic assigns a GAF score of 30-40. (R. 412). Dr. Wigutow assigns a GAF score of 30-40. (R. 413). Dr. Jain initially assigns a GAF score of of 50-55 in March of 2012, (R. 424), but after treating Dukleska, Dr. Jain assigns a GAF score of 40-45 in June of 2013. (R. 415). Dr. Durak assigns a GAF score of 45. (R. 321). Dr. Neville assigns a GAF score of 45. (R. 325). These scores range between 30-55, with Dr. Jain's most recent GAF score being 40-45. A GAF score in the 41-50 range indicates "[s]erious symptoms (*e.g.*, suicidal ideation, several obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational or school functioning (*e.g.*, no friends, unable to keep a job). *Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders* (4th ed. text revision 2000). A GAF score of 35-40 corresponds to "[s]ome impairment in reality testing or communication (e.g. speech is at times illogical, obscure or irrelevant) *or* major impairment in several areas, such as

summarily dismiss this highly corroborative line of evidence was error. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (citation omitted). Remand is therefore necessary.

Even if the ALJ's assignment of "little weight" to the opinions of Dukleska's treating physicians was proper, the ALJ's opinion would still require remand. The ALJ failed to discuss or show he was guided by the factors in 20 C.F.R. § 404.1527(c)(2)(i)-(ii) and § 404.1527(c)(3)-(6) as "required by regulation[.]" *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014). While the ALJ discussed the inconsistency of the treating physicians' opinions with respect to Dukleska's self-reported activities, the ALJ failed to explain or show he considered the remaining factors. There existed ample evidence in the record about the length of treatment relationship and frequency of the examination; nature and extent of the treatment relationship; supportability; and whether the treating physician was a specialist in the relevant area. On remand the ALJ should address these factors in determining what weight to provide the opinions of treating physicians.

**B. Credibility determination**

Dukleska also argues the ALJ's opinion as to the credibility of her testimony is flawed because of a "boilerplate" analysis. Specifically, Dukleska challenges the ALJ's boilerplate conclusion which states:

> "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision."

(R. 23).

---

work or school, family relations, judgment, thinking or mood (e.g. depressed adult voids friends, neglects family, and is unable to work[.])" *Id*. at 32.

The Seventh Circuit has criticized ALJ's summarily using this exact language, as it is unclear which statements are not credible and what "not entirely" means. *Spiva v. Astrue*, 628 F.3d 346, 348 (7th Cir. 2010) (citing *Parker v. Astrue*, 597 F.3d 920 (7th Cir. 2010). In this case the ALJ provides, in addition to this conclusion, a cursory recitation of the daily activities Dukleska can perform. Furthermore, the ALJ asserts the reasons for his conclusion are explained in the decision. This Court is not persuaded by either of the ALJ's reasons.

First, the ALJ continues to error in his misplaced reliance on Dukleska's activities of daily living. As explained above, remand is necessary to rectify the ALJ's treatment of Dukleska's daily activities. Again, the ALJ relies on Dukleska's ability to do chores, ability to be around family, ability to travel and be around people from Macedonia, and ability to go grocery shopping, as reasons to find Dukleska's statements as not credible. (R. 23). This Court would again warn the ALJ from treating Dukleksa's activities in this way. This Court would note for the ALJ there is a likely difference in stress levels when being around family members and in one's home country, compared to being around coworkers. The workplace is not the same as being around family. Additionally, to say Dukleksa has no problem grocery shopping is clearly contrary to the record, when Dukleska can only go in the presence of her husband, (R. 262), and often has to be led to the car to rest while her family finishes shopping. (R. 253). The ALJ's continued reliance on these activities is error, and the ALJ will need to address this.

Finally, this Court would note the ALJ's conclusion that Dukleska's statements were not fully credible for "the reasons explained in this decision" is not an analysis. Again, this Court is put into a position of having to review the ALJ's discussion and create an argument. This is not the role of the Court in a substantial evidence determination. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). An ALJ must "articulate at some minimal level his analysis of

the evidence" to permit an informed review. *Zurawski*, 245 F.3d at 887. The ALJ failed to do so. On remand the ALJ will need to explain specifically the reasons for his credibility determination.

Dukleska asks this Court for summary judgment in favor of her disability claim with an award of benefits. [DE 13]. In this context it is not the Court's role to reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez*, 336 F.3d at 539. Accordingly, where issues of credibility and weight remain, remand is proper.

## IV.  CONCLUSION

For the foregoing reasons, the Court **DENIES** Dukleska's motion for summary judgment, but GRANTS Dukleska's request to remand the ALJ's decision. [DE 14]. This case is **REMANDED** for further proceedings consistent with this opinion.

SO ORDERED.

ENTERED:  March 1, 2016

                                                   /s/ JON E. DEGUILIO
                                                   Judge
                                                   United States District Court